# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Lindsey Young, | No. CV-25-00342-TUC-JGZ (JEM) |
| Plaintiff, | **REPORT AND RECOMMENDATION** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff Lindsey Young ("Young") seeks judicial review of a final decision by the Commissioner of the Social Security Administration ("Commissioner"). (Doc. 1.) The matter, on referral to the undersigned United States Magistrate Judge for Report and Recommendation, is ripe for determination. (Doc. 11, 17, 21, 22.) As more fully set forth below, the undersigned recommends that the district court reverse the ALJ's decision.

## BACKGROUND

### Procedural History

On June 8, 2022, Young protectively filed a Title II application for a period of disability and disability insurance benefits under the Social Security Act alleging disability beginning May 20, 2022. (AR 189-92.) Young's application was denied initially on December 21, 2022, and denied on reconsideration on August 28, 2023. (AR 75-84

(disability determination at the initial level); AR 85-95 (disability determination at the reconsideration level).) On May 22, 2024, Young appeared and testified at an administrative hearing before Administrative Law Judge ("ALJ") Laura Speck Havens. (AR 48-74.) On July 8, 2024, the ALJ issued her non-disability decision. (AR 18-31.) On May 19, 2025, the Appeals Counsel denied Young's request for review. (AR 1-6.)

The ALJ's decision is the final decision of the Commissioner and the district court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

**The ALJ's Decision**

The ALJ found that Young has not engaged in substantial gainful activity since May 20, 2022, her alleged onset date. (AR 21.) The ALJ determined that Young suffers from the severe impairments of hemiplegic migraines, degenerative disc disease of the lumber spine and obesity. *Id*. The ALJ determined that Young does not have an impairment or a combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (AR 24.) The ALJ determined Young's residual functional capacity ("RFC") as the ability:

> to perform light work as defined in 20 CFR 404.1567(b) except for standing/walking for up to 4 hours per workday; occasionally climbing ladders/ropes/scaffolds or ramps/stairs, balancing, stooping, kneeling, crouching, or crawling; and withstanding occasional exposure to hazards (e.g., unprotected heights or moving machinery), humidity/wetness, or loud noise.

(AR 25.) The ALJ determined that Young is unable to perform any past relevant work. (AR 30.) Considering Young's age, education, work experience and RFC, the ALJ found that she can make a successful adjustment to other work that exists in significant numbers in

the national economy. (AR 30.) Accordingly, the ALJ found that Young has not been under a disability from her alleged onset date through the date of the ALJ's decision. (AR 31.)

**Background**

*Initial Determination*: Young filed her initial claim for disability alleging that she suffers from the following illness, injuries, or conditions: hemiplegic migraines/complicated migraines, migraine with aura, foot drop, vertigo, tremors, degenerative disease, headache disorder, chronic headache "DO", insomnia, pituitary gland tumor, aphasia, "consciousness [and] awareness findings," and anxiety. (AR 76.) Disability examiner Randall Garland, Ph.D., found that Young has the medically determinable impairments of migraine, vertiginous syndromes, disorders of muscle, ligament and fascia, depressive, bipolar and related disorders, and anxiety and obsessive compulsive disorder. (AR 79.) Dr. Garland classified Young's migraine, vertiginous syndrome, and muscle, ligament and fascia disorders as severe and he classified Young's depressive, bipolar, anxiety and obsessive-compulsive disorders as non-severe. *Id*. Dr. Garland determined that Young is mildly limited in her ability to understand, remember, or apply information, interact with others, concentrate, persist or maintain pace, and adapt or manage oneself. (AR 80.)

*Reconsideration Determination*: At the reconsideration level, Young alleged disability due to the following illnesses, injuries, or conditions: hemiplegic migraines/complicated migraines, migraine with aura, foot drop, memory loss, aphasia, vertigo, tremors, degenerative disease, headache disorder, consciousness and awareness

findings, chronic headache disorder, anxiety, insomnia, and pituitary gland tumor. (AR 85.) Additionally, Young alleged the follow changed conditions as of June 1, 2022: dizziness, lack of stamina, fatigue, frequent urination, lack of balance, lack of grip strength, pain, slurred speech, stiffness, stuttering, swelling, tingling, tremors/shakiness, trouble sleeping/insomnia, vomiting, weakness, headaches, migraines, incontinence, hallucinations, vision problems, irritability, nightmares, anxiety, depression, panic attacks, and limitations in bending, kneeling, lifting, reaching, squatting, stair climbing, using hands, walking, following instructions, understanding, and concentrating, and memory loss. *Id*. Disability examiner Kevin Donovan, Ph.D., found that Young's migraine, vertiginous syndrome, and muscle, ligament and fascia disorders are severe. (AR 87.) Dr. Donovan found that Young's depressive, bipolar, anxiety and obsessive-compulsive disorders are non-severe. *Id*. Dr. Donovan determined that Young is mildly limited in her ability to understand, remember, or apply information, interact with others, concentrate, persist or maintain pace, and adapt or manage oneself. (AR 88.)

*Hearing Testimony*: Young's headaches make it difficult for her to speak due to aphasia and short-term memory loss. (AR 53.) She does not exercise or go outside because it exacerbates her migraines. (AR 56.) Young testified to having two to three headaches per month. (AR 61.) She attends therapy weekly. (AR 58.)

Young was diagnosed with a pituitary tumor. (AR 59.) She is in pain at a level four to five daily, but when she has a migraine her pain it increases to an eight or nine. (AR 61.) Young has a medication cocktail that she takes at the onset of a migraine, and if that is unsuccessful, she goes to the emergency room. (AR 61.)

Young testified that she also experiences saddle paresthesia and can either be unable to urinate or defecate or do so unknowingly. (AR 67.) She suffers from hypotension which can cause her to faint. (AR 65.) Her hypotension can worsen during migraine episodes because she is unable to eat. (AR 66.)

As for her ability to walk, Young testified "I can – if I'm not having a migraine, I - - - I can walk like to get the mail; can walk, you know, to the car; can walk - if it's an air-conditioning like a building, can walk inside to go to an appointment. I don't walk for exercise mostly because it's outside and it's hot and that makes everything worse." (AR 59.) Young cannot sit comfortably for longer than ten minutes. (AR 60.) During a migraine attack, Young cannot dress, walk or use the restroom without assistance. (AR 65.) She feels that she can no longer work because she is unreliable. (AR 67.)

Vocational expert ("VE") Linda Tolley ("Tolley") testified that employers tolerate "about a half day per month" of unplanned absences. (AR 71.) VE Tolley testified, "When the employee gets to the point of where their (*sic*) missing one day per month consistent of unscheduled absences, at that point, they are usually in jeopardy of losing their job." *Id*. VE Tolley testified that there are no jobs where an employee would be allowed to "lay down on the position." *Id*. VE Tolley testified that unscheduled breaks would not be tolerated in the unskilled positions that she identified. (AR 72.) According to VE Tolley, if an employee is unable to maintain concentration for at least two-hour periods and required redirection the employee would be unable to sustain fulltime competitive employment. (AR 73.)

…

**ISSUES ON REVIEW**

Young raises two issues for review. (Doc. 17 at p. 1.) First, Young argues that the ALJ failed to comply with applicable regulations in rejecting the opinion of Stephanie Green, FNP. *Id*. Second, she argues the ALJ failed to reconcile her mental findings in the paragraph B criteria at step two of the sequential evaluation process with the assessed limitations in the residual functional capacity ("RFC"). *Id*. The Commissioner argues against Young's claims of error. (Doc. 21.) As explained below, this Court agrees with Young on her second claim of error.

**FIVE-STEP SEQUENTIAL EVALUATION PROCESS**

The Commissioner employs a five-step sequential process to evaluate claims. 20 C.F.R. § 404.1520; *see also Heckler v. Campbell*, 461 U.S. 458, 460-462 (1983). To establish disability the claimant bears the burden of showing: (1) s/he is not working; (2) s/he has a severe physical or mental impairment; (3) the impairment meets or equals the requirements of a listed impairment; and (4) the RFC precludes the performance of past work. 20 C.F.R. § 404.1520(a)(4). At step five, the burden shifts to the Commissioner to show that the claimant has the RFC to perform other work that exists in substantial numbers in the national economy. *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007). If the Commissioner conclusively finds the claimant "disabled" or "not disabled" at any point in the five-step process, the ALJ does not proceed to the next step. 20 C.F.R. § 404.1520(a)(4).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th

Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)). The findings of the Commissioner are meant to be conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than a mere scintilla but less than a preponderance." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)). The court may overturn the decision to deny benefits only "when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001). This is so because the ALJ "and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney*, 981 F.2d at 1019 (quoting *Richardson v. Perales*, 402 U.S. 389, 400 (1971)); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004). The Commissioner's decision, however, "cannot be affirmed simply by isolating a specific quantum of supporting evidence." *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998) (citing *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989)). Reviewing courts must consider the evidence that supports as well as detracts from the Commissioner's conclusion. *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975).

A claimant is "disabled" for the purpose of receiving benefits if she is unable to engage in any substantial gainful activity due to an impairment which has lasted, or is expected to last, for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). "The claimant bears the burden of establishing a prima facie case of disability." *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995), *cert. denied*, 517 U.S. 1122 (1996); *Smolen v. Chater*, 80 F.3d 1273, 1289 (9th Cir. 1996).

**ANALYSIS**

**<u>The ALJ Erred in Failing to Consider or Record Her Consideration of Young's Mild Limitation in All Four of the Paragraph B Domains in Formulating the RFC</u>**

Young argues that despite finding that she is mildly limited in her ability to understand, remember or apply information, interact with others, concentrate, persist or maintain pace, and adapt or manage herself, the ALJ erroneously failed to consider her mild limitations in determining her RFC. (Doc. 17 at pp. 15-17.) She argues that this error is not harmless. *Id*. at 18-19. The Commissioner argues that the ALJ did not err claiming that when a claimant's mental impairments are only mildly limiting, an ALJ is not required to incorporate mental limitations into the RFC. (Doc. 21 at pp. 7-9.) As explained below, this Court agrees with Young.

When a claimant has presented a "colorable claim" of mental impairment, the ALJ is required "to follow a special psychiatric review technique." *Bridges v. Comm'r of Soc. Sec.*, No. 2:24-CV-03487-CKD, 2026 WL 206087, at *3 (E.D. Cal. Jan. 27, 2026) (quoting *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 725-26 (9th Cir. 2011); citing 20 C.F.R. § 404.1520a(a)). "In it, the ALJ rates the degree of functional limitation for four functional areas and determines whether the impairment is severe." *Bridges*, 2026 WL 206087, at *3 (citing *Keyser*, 648 F.3d at 725; 20 C.F.R. § 404.1520a). The four areas are known as the "paragraph B" criteria: understanding and applying information; interacting with others; concentrating, persisting, and maintain pace; and adapting or managing oneself. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1 §§ 12.04(B), 12.06(B), 12.15(B). "Agency policy

explains that 'the limitations identified in the 'paragraph B' ... criteria are not an RFC assessment[.] ... The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment[.]' " *Bridges*, 2026 WL 206087, at *3 (citing Social Security Ruling (SSR) 96-8p).

Here, at the initial and reconsideration levels, Young was determined to be mildly limited in all four paragraph B domains. (AR 80, 88.) The ALJ also conducted a paragraph B analysis and found:

First, in the area of understanding, remembering, or applying information, the claimant has mild limitation. She did often endorse experiencing memory loss associated with her hemiplegic migraines, and her treatment providers sometimes noted her to have mildly impaired remote memory, though there was little explanation for how they reached that conclusion beyond reflecting the claimant's subjective complaints. (5F/22, 27, 32; 8F/24). But the claimant was also often noted to have a normal capacity for recent and remote memory, and otherwise typically demonstrated full orientation, alertness, and cognition (5F/100;11F/5; 13F/42; 18F/206; 21F/2). Thus, the undersigned finds that the claimant's ability to understand, remember, and apply information independently, appropriately, effectively, and on a sustained basis is only slightly limited, therefore justifying the designation of "mild" limitation (*see* 20 CFR 404, Subpart P, Appendix 1, Listing of Impairments, 12.00F2).

Second, in the area of interacting with others, the claimant has mild limitation. During therapy sessions, the claimant regularly described her stressful relationship with and eventual separation from her spouse, as well as her feeling pathologized by healthcare providers, which the undersigned acknowledges could reasonably lead to heightened anxiety interacting with others and feeling of isolation (*see generally* 18F). However, the claimant has nearly always reflected to present with an appropriate mood and effect (*see* 5F; 8F; 9F; 13F; 18F); in fact, she was positively described to be pleasant and cooperative (e.g., 18F/205; 19F/36). Further, the claimant did not endorse having issues getting along with others, including authority figures, and she denied ever having been terminated from a job because of such issues (6E/6). She also expressed having an active interest in engaging in community events, and eventually did so after separating from her spouse and moving to Tucson (18F/26, 130). Thus the undersigned finds that the

claimant's ability to interact with others independently, appropriately, effectively, and on a sustained basis is only slightly limited, therefore justifying the designation of "mild" limitation (*see* 20 CFR 404, Subpart P, Appendix 1, Listing of Impairments, 12.00F2).

Third, in the area of concentrating, persisting, or maintaining pace, the claimant has mild limitation. She frequently reported experiencing difficulty concentrating to her therapist after establishing mental healthcare in July 2023, and her neurologist indicated that her migrainous (*sic*) symptoms constantly affected her ability to concentrate (although, again, there was little explanation for this conclusion beyond reflecting the claimant's subjective complaints) (16F/2; 18F/81, 94, 102, 111, 138, 149, 169, 207). Despite this, the claimant was consistently noted to have a normal capacity for attention and concentration (e.g., 5F/100; 11F/5; 13F/42). Thus, the undersigned finds that the claimant's ability to concentrate, persist, and maintain pace independently, appropriately effectively, and on a sustained basis is only slightly limited, therefore justifying the designation of "mild" limitation (see 20 CFR 2024, Subpart P, Appendix 1, Listing of Impairments, 12.00F2).

Finally, in the area of adapting or managing oneself, the claimant has mild limitation. She periodically seemed to experience some difficulty managing symptoms of anxiety and depression, particularly while she was still living with her spouse and dealing with their impending separation (see generally 18F). However, the claimant was pretty consistently reflected to be making good progress in therapy, especially after relocating to Tucson, and was lauded by her therapist for being a strong advocate for herself (18F/97). Otherwise, she was regularly noted to demonstrate normal insight and judgment (5F/17, 22, 32; 18F/206; 19F/106; 21F/2). Thus, the undersigned finds that the claimant's ability to adapt and manage herself independently, appropriately, effectively, and on a sustained basis is only slightly limited, therefore justifying the designation of "mild" limitation (see 20 CFR 404, Subpart P, Appendix 1, Listing of Impairments, 12.00F2).

(AR 23-24.)

After conducting the foregoing paragraph B analysis, the ALJ considered the state agency psychological consultants' medical opinions that were issued at the initial and reconsideration levels as follows:

Regarding the claimant's mental limitations, state agency psychological consultants Randall Garland, PhD, and Kevin Donovan, PhD, both

determined that the claimant would have no more than mild limitations in any domain of mental functioning (2A/5; 3A/4). Dr. Garland's and Dr. Donovan's opinions were both adequately supported by and consistent with the claimant's unremarkable mental status examinations and lack of historic mental health treatment at the time of each psychological consultant's individual review, and they were also consistent with the mental health records generated within the last year detailing only mild psychologically based symptoms and significant positive progress.

(AR 29.) Thereafter, in the RFC formulation, the ALJ stated:

> After careful consideration of the entire record, the undersigned finds that the claimant has the [RFC] to perform light work as defined in 20 CFR 404.1567(b) except for standing/walking for up to 4 hours per workday; occasionally climbing ladders/ropes/scaffolds or ramps/stairs, balancing, stopping, kneeling, crouching, or crawling; and withstanding occasionally exposure to hazards (e.g. unprotected heights or moving machinery), humidity/wetness, or loud noise.
>
> ***
>
> Given the totality of the evidence, the undersigned finds that the claimant does suffer from functional limitations caused by her impairments, which would prevent her from performing work activity in excess of the residual functional capacity noted above. Specifically, the undersigned finds that the claimant's lumbar pain, foot drop, and large body habitus support a degree of exertional limitation slightly below what would be typically expected of light work. Likewise, the undersigned also finds it appropriate to incorporate certain postural and environmental limitations that would be made unreasonably uncomfortable or even dangerous by the claimant's various impairments in combination, including her chronic hemiplegic migraines, which—albeit far milder and better controlled than they once were—reasonably risk being exacerbated.

(AR 25, 30.)

The RFC contains no mental limitations. *See* AR 25. Additionally, although the ALJ assessed mild limitations in all four paragraph B domains, the ALJ did not mention these limitations after step two. *See* AR 24-30. Nor did the ALJ ask VE Tolley to respond to questioning while assuming a hypothetical person with Young's physical RFC as well as

Young's mild limitation in all four paragraph B domains. *See* AR 69-71 (VE testimony in response to ALJ's hypothetical that did not require the VE to assume the hypothetical person had mild (or any) limitation in the four paragraph B domains).

The RFC is the most a person can do despite his or her limitations. *See* 20 C.F.R. § 404.1545(a). An ALJ is required to consider all of a claimant's medically determinable impairments, even those that are not severe, in formulating a claimant's RFC. *See* 20 C.F.R. §4 04.1545(a)(2). District courts within the Ninth Circuit recognize that "*consideration* of 'the limiting effects of all impairments' does not necessarily require the *inclusion* of every impairment into the final RFC if the record indicates the non-severe impairment does not cause a significant limitation in the [claimant's] ability to work." *See Michelle M. v. Saul*, Case No.: 19-cv-00272-JLB, 2020 WL 1450442, at *7 (S.D. Cal. Mar. 25, 2020) (quoting *Medlock v. Colvin*, No. CV 15-9609-KK, 2016 WL 6137399, at *5 (C.D. Cal. Oct. 20, 2016)). These courts also recognize that an ALJ errs when a court cannot discern definitively from the hearing decision whether the ALJ considered a claimant's non-severe mental impairment(s) and any corresponding limitation(s) before assigning a claimant an RFC without any mental restrictions. *Michelle M.*, 2020 WL 1450442, at *7. *See also Solomon v. Comm'r of Soc. Sec. Admin.*, 376 F. Supp. 3d 1012, 1021 (D. Ariz. 2019) (finding error where the ALJ's decision provides no indication that the ALJ considered the claimant's mild limitation in social functioning and concentration, persistence and pace when evaluating the claimant's RFC and citing *Ghanim v. Colvin*, 763 F.3d 1154, 1166 (9th Cir. 2014) (holding that "[i]n determining a claimant's residual functional capacity, the ALJ must consider all of a claimant's medically determinable impairments, including

those that are not severe") and *De La Cruz v. Colvin*, 2014 WL 2865076, *2-3 (C.D. Cal. 2014) (remanding because ALJ failed to assess all of the claimant's medically determinable impairments in the RFC analysis) and *Winter-Duncan v. Astrue*, 2012 WL 1641891, *4 (W.D. Wash. 2012) (same)); *Hutton v. Astrue*, 491 Fed. Appx. 850, 850 (9th Cir. 2012) (holding the ALJ erred "in failing to include Hutton's post-traumatic stress disorder . . . in his hypotheticals to the vocational expert at [s]tep [f]ive," after finding it caused the claimant "'mild' limitations in the areas of concentration, persistence, or pace"); *Silvester H. v. Kijakazi*, Case No. 5:20-cv-02503-SP, 2022 WL 4466717, at *7-8 (C.D. Cal. Sept. 26, 2022) (collecting cases and finding that "[d]espite the ALJ's assurances, the opinion does not include any discussion or analysis of how plaintiff's non[-]severe mental impairments were factored into the RFC determination, and the RFC itself does not contain any non[-]exertional limitations . . . For this reason, it is not clear to the court that in determining plaintiff's RFC the ALJ actually considered the mild limitations across the functional areas found at step two."); *Vrdoljak v. Kijakazi*, 665 F. Supp. 3d 923, 930-21 (N.D. Ill. 2023) (reversing where ALJ found "mild" limitations in all four paragraph B domains but did not include any mental restriction in the RFC, without explanation); *Bridges*, 2026 WL 206087 at *5-6 (finding ALJ erred when ALJ only considered evidence of physical limitation in assessing RFC and did not consider paragraph B limitations).

As laid out above, the ALJ's decision contains no indication that the ALJ considered Young's mild limitation in the four paragraph B domains of mental functioning in determining the RFC. The entirety of the ALJ's RFC formulation discussion is devoted to Young's physical impairments. *See* AR 25-30.

The Commissioner argues that when a claimant's mental impairments are non-severe and only mildly limiting at step two, an ALJ is not required to incorporate mental limitations in the RFC. (Doc. 21 at p. 8.) While the Commissioner is correct that there is no requirement that an ALJ *incorporate* mental limitations in an RFC, the ALJ is required to *consider* the limiting effects of all impairments. *See Tammy W. v. Comm'r of Soc. Sec.*, 787 F. Supp. 3d 1175, 1183 (W.D. Wash. 2025) (recognizing that "[t]his [c]ourt and others have held that an ALJ is not required to import any restriction in the RFC based on a 'mild' mental limitation but does need to at least consider the issue. . .Therefore, 'the question is not whether the ALJ's paragraph B findings are consistent with the RFC, but whether the ALJ has provided an adequate explanation for the mental limitations contained in the RFC."). *See also, Wendy C. v. Comm'r of Soc. Sec.,* No. 3:19-CV-05486, 2020 WL 3287286, at *6 (W.D. Wash. June 18, 2020) (recognizing that in formulating the RFC "the ALJ must consider the step three limitations along with all the relevant evidence."). For this reason, this Court finds that the cases relied upon by the Commissioner are not persuasive. *See* Doc. 21 at p. 8 (citing *Woods*, 32 F.4th at 794 (rejecting claimant's argument that the ALJ was required to include mild mental limitations in the RFC); *Sanchez v. Comm'r of Soc. Sec. Admin.*, No. CV-21-01709-HX-DLR, 2023 WL 6119631, at *2 (D. Ariz. Sept. 19, 2023) (recognizing that "there is no requirement that every non-severe mental limitation be translated into a functional limitation in the RFC."); *Pugh v. Kijakazi*, No. 2:20-cv-02255, 2022 WL 1782517, at *5 (E.D. Cal. June 1, 2022) (holding there is "scant legal support" for the position that the ALJ is required to account for mild mental limitations in the RFC). None of the cases relied upon by the Commissioner stand

- 14 -

for the proposition that it is permissible for an ALJ to fail to provide an adequate explanation for including—or failing to include—mental limitations in a claimant's RFC. Indeed, the great weight of authority is to the contrary.

This Court also finds that the Commissioner's attempt to distinguish *Lubin v. Comm'r of Soc. Sec.*, 507 F. Appx. 709, 712 (9th Cir. 2013), relied upon by Young, also fails. (Doc. 21 at p. 8.) In *Lubin*, the court of appeals found, *inter alia*, that the ALJ erred in failing to include the finding that Lubin suffered moderate difficulties in maintaining concentration, persistence, or pace in the RFC determination or in the hypothetical question to the vocational expert. 507 F. Appx. at 912. The Commissioner argues that *Lubin* does not support Young's argument because the claimant in *Lubin* was found to have moderate limitations at step two in contrast to Young's mild limitation here. (Doc. 21 at p. 8.) This is a distinction without a difference. Just as the ALJ in *Lubin* was found to have erroneously failed to include a moderate limitation assessed in one of the four paragraph B domains in the RFC determination, the ALJ here failed to consider (or record her consideration of) Young's mild limitation in all four of the paragraph B domains in the RFC determination.

Finally, the Commissioner summarily argues that "[s]ince the ALJ considered [Young's] allegations about her mental limitations, the relevant medical evidence, and evaluated the prior administrative findings relevant to her mental impairment, the ALJ did exactly what [Young] requests." (Doc. 21 at p. 9.) The Commissioner's argument (which is one sentence long) is underdeveloped and contains no legal analysis. *Id*. Accordingly, this Court does not consider it. *See Huerta v. Astrue*, No. EDCV 11-1868-MLG, 2012 WL 2865898, at *1 (C.D. Cal. July 12, 2012) (declining to consider an issue in a social security

appeal where the court found the issue underdeveloped and lacking any legal analysis).

**The ALJ's Error is Not Harmless**

Having found error, this Court must determine whether the error is harmless. An error is harmless if it was "inconsequential to the ultimate non[-]disability determination[.]" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006) (internal quotation marks omitted). An ALJ must include those limitations that are supported by substantial evidence and an ALJ is not free to disregard properly supported limitations in hypotheticals posed to a vocational expert. *Id*. (additional citation omitted).

This Court cannot determine that the outcome at steps four and five would be the same had the ALJ not erred in failing to include Young's mild limitation in all four paragraph B domains in the hypothetical question that she posed to VE Tolley. *See Aida I. v. Saul*, Case No. 3:19-cv-00476-AJB-RNB, 2020 WL 434319, at *4-5 (S.D. Cal. Jan. 28, 2020) (finding harmful error because the court cannot determine how the vocational expert would have testified had the specific mild limitations to which Dr. Nicholson opined were included in the hypotheticals posed to the vocational expert); *Bridges*, 2026 WL 206087, at *5 (finding harmful error where the ALJ assessed mild mental limitations at step two but failed to mention these limitations after the step two evaluation and the RFC contained no mental limitations).

This Court determines the ALJ's error is not harmless.

**Remand Is Recommended**

Upon finding the ALJ committed reversible error, the district court has the discretion to remand or reverse and award benefits. *Mack v. Saul*, No. 1:18-cv-01287-

DAD-BAM, 2020 WL 2731032, at *3 (E.D. Cal. May 25, 2020) (citing *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989)). The United States Court of Appeals for the Ninth Circuit has held that, "[g]enerally, we direct the award of benefits in cases where no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed." *Mack*, 2020 WL 2731032, at *3 (quoting *Ghokassian v. Shalala*, 41 F.3d 1300, 1304 (9th Cir. 1994)). "Where . . . an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency." *Treichler v. Comm'r of Social Sec. Admin.*, 775 F.3d 1090, 1105 (9th Cir. 2014); *see also Garrison v. Colvin*, 759 F.3d 995, 1021 (9th Cir. 2014).

Young requests remand to the Commissioner for further proceedings. (Doc. 17 at p. 19.) This Court determines that remand to the Commissioner is required so the ALJ may first consider Young's mild limitation in all four of the paragraph B domains in formulating the RFC.

**Remaining Issue**

On remand, Young's claim that the ALJ erred in her consideration of FNP Stephanie Green's opinion should also be considered. *See Augustine ex rel. Ramirez v. Astrue*, 536 F. Supp. 2d 1147, 1153 n.7 (C.D. Cal. 2008) (determining that "th[e] [c]ourt need not address the other claims plaintiff raises, none of which would provide plaintiff with any further relief than granted, and all of which can be addressed on remand."); *Slover v. Kijakazi*, Case No. 1:21-cv-01089-ADA-BAM, 2023 WL 5488416, at *5 (E.D. Cal. Aug. 23, 2023) (declining to address claimant's remaining arguments upon finding error requiring remand); *Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) (holding that "because we

- 17 -

remand the case to the ALJ for the reasons stated, we decline to reach [the claimant's] alternative ground for remand]").

## RECOMMENDATION

For the foregoing reasons, it is **RECOMMENDED** that the district court **REVERSE** the decision of the ALJ and **REMAND** this matter to the Commissioner for further proceedings. Pursuant to Federal Rule of Civil Procedure 72(b)(2), any party may serve and file written objections within fourteen days of being served with a copy of the Report and Recommendation. A party may respond to the other party's objections within fourteen days. No reply brief shall be filed on objections unless leave is granted by the District Court. If objections are not timely filed, they may be deemed waived. If objections are filed, the parties should use the following case number: **25-cv-00342-JGZ**.

Dated this 22nd day of June, 2026.



James E. Marner
United States Magistrate Judge